FILED

2022 Mar-08  PM 02:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TAMEKA GOREE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **VS.** | ) | _____ |
| | ) | |
| **ONEMAIN GENERAL** | ) | |
| **SERVICES CORPORATION,** | ) | **JURY DEMAND REQUESTED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Tameka Goree, a resident of Alabama who was employed by OneMain General Services Corporation, (hereinafter referred to as "Defendant" OR "OneMain"). Plaintiff contends that Defendant violated Title VII of the Civil Rights Act of 1964, as amended, including the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. In support thereof, Plaintiff hereby alleges the following:

### JURISDICTION AND VENUE

1.      This action is brought pursuant to the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. and 42 U.S.C. § 1981. This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1331.

2. Venue in this Court is appropriate for all causes of action stated herein pursuant to 28 U.S.C. § 1391(b)(2) because the acts alleged as a basis for the federal claims were committed within the jurisdiction of the United States District Court for the Northern District of Alabama. This action is brought within the state where the unlawful employment practices were committed, making venue proper.

3. This Court has personal jurisdiction over the Defendant for the purposes of this lawsuit.

### PARTIES

4. Plaintiff, Tameka Goree (hereinafter "Plaintiff"), is an African American female citizen of the United States over the age of majority, and she is a resident of Madison County, Alabama. At all times material to this Complaint, Plaintiff was an employee of OneMain.

5. Defendant OneMain General Services Corporation is a foreign corporation incorporated in Indiana, who conducts business in this judicial district at multiple locations including 4925 University Dr NW # 112, Huntsville, AL 35816.

6. At all times relevant in this lawsuit, the Defendant OneMain has continuously been doing business in the State of Alabama and has continuously had at least 15 employees.

7.      At all times relevant to this lawsuit, the Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Title VII § 701(b), (g) and (h) and within the meaning of 42 U.S.C. § 2000e-(b), (g) and (h).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      Plaintiff has timely and fully complied with all perquisites for administrative exhaustion required for jurisdiction in this court under Title VII, and thus all conditions precedent to this lawsuit within the meaning of Rule 9(c) of the Fed. R. Civ. Pro. have been performed or have otherwise occurred.

9.      In particular, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 5, 2021, within 180 days of discriminatory conduct by the Defendant (a copy of which is attached hereto as Exhibit "A"). On December 6, 2021, the EEOC issued to the Plaintiff a "Dismissal and Notice of Rights" letter, including a "Notice of Suit Rights" (a copy of which is attached hereto as Exhibit "B"), which was received by Plaintiff via the US Mail. This lawsuit is timely filed within 90 days of the receipt of that notice.

10.     The Plaintiff has timely and fully complied with all prerequisites for administrative exhaustion as described in paragraphs 8-9 of this Complaint.

## STATEMENT OF FACTS

11. Plaintiff commenced her employment with Defendant OneMain on or around November 2013. Plaintiff remained in the employ of Defendant continuously until on or around April 8, 2021.

12. On or around April 8, 2021, Plaintiff was terminated.

13. Plaintiff was an Assistant Branch Manager at the time of her termination.

## COUNT ONE – Title VII Discrimination

14. The Plaintiff incorporates and re-alleges the facts set out in paragraphs 11-13 of this Complaint as if set forth fully herein.

15. At all relevant times, Plaintiff was an employee of Defendant and Defendant controlled the means and manner of Plaintiff's work.

16. Defendant OneMain intentionally discriminated against the Plaintiff, an African American employee, with malice or reckless disregard to the Plaintiff's federally protected rights.

17. Plaintiff was subject to discriminatory working conditions and standards, and she was terminated and replaced by a Caucasian employee.

18. Plaintiff and other non-Caucasian employees within her district were treated differently than Caucasian employees.

19. The Plaintiff's District Manager, Chase Flynn, a Caucasian male, specifically targeted Plaintiff's branch, which had multiple non-Caucasian employees.

20. Mr. Flynn and his supervisor, Herb Wilkie, another Caucasian male, unlawfully discriminated against Plaintiff and other employees in the district based on their race.

21. Mr. Flynn treated Plaintiff differently than Caucasian employees during her tenure with OneMain.

22. For example, Plaintiff and many others reported Brandon Brown, a Caucasian male, for issues working with others and for making gendered and racial comments, yet he received multiple chances, even being moved around between different branches, instead of being terminated.

23. Non-Caucasian employees were not given the same chances to keep their employment.

24. Also, when Plaintiff was out on FMLA leave late 2019-early 2020, Mr. Flynn contacted Plaintiff's branch manager, Ronald White, an African American male, requesting that Mr. White unlawfully discipline Plaintiff for being out on FMLA leave. Mr. White refused to do so.

25. Mr. Flynn did not attempt to discipline Caucasian employees for taking FMLA leave.

26.    Mr. Flynn also got into an altercation with Plaintiff over the phone when discussing a loan in or around early 2020. Plaintiff reported Mr. Flynn through the company ethics hotline, as Mr. Flynn had treated her disrespectfully and made accusations about her work.

27.    Mr. Flynn did not treat Caucasian employees that way.

28.    Furthermore, Mr. Flynn terminated Mr. White, an African American male, Plaintiff, an African American female, and Alexis Candie, a Hispanic female all within six months of one another and replaced them with Caucasian employees.

29.    Another African American employee from that branch, Tina Merritt, had also been terminated by Mr. Flynn prior to the terminations of all the remaining non-Caucasian employees at the branch, including Plaintiff.

30.    Mr. White was replaced by Pamela Vaughn, a Caucasian female, and another Caucasian employee showed up to work the day Plaintiff and Ms. Candie were terminated.

31.    Plaintiff's branch manager, Mr. White, was terminated by Defendant for violations that Caucasian branch managers were not terminated for.

32.    Upon Mr. White's termination, Defendant also discriminated against Plaintiff by failing to promote to her.

33.    Plaintiff as the assistant branch manager was responsible for running the branch in Mr. White's absence.

34. However, when Plaintiff asked Mr. Flynn for access to be able to take over Mr. White's duties while the position was open, Mr. Flynn refused and brought in Ms. Vaughn instead to perform what should have been Plaintiff's duties in Mr. White's absence.

35. Therefore, Ms. Vaughn was given the branch manager position and duties before interviews were even conducted in January of 2021.

36. Plaintiff was interviewed for the position, and despite being qualified for the position, being previously told she was next in line for the job should anything happen to Mr. White by Mr. Wilkie, and familiar with the branch and a well performing member of the branch, Plaintiff was not awarded the position.

37. After Mr. Flynn brought in Ms. Vaughn to replace Mr. White, he had her pull old loans that had already passed an audit to find any mistakes as a pretext for terminating Plaintiff due to her race as well.

38. Plaintiff's branch was a well-performing branch, her branch passed all of their audits, Plaintiff received good performance reviews, and Plaintiff did not have write-ups against her, yet she was terminated for a miscommunication about whether an employer had been called to confirm employment on a loan.

39. Caucasian employees had similar or bigger mistakes with loan applications and they were not terminated.

40.    Caucasian employees were treated differently than non-Caucasian employees in the district in terms of discipline.

41.    Furthermore, Caucasian employees have made mistakes with paperwork, failed to make a call properly to confirm a payment or information for a loan, loans have failed audits in other branches, yet these employees were not immediately terminated.

42.    Mr. Flynn himself made a major mistake by asking his branches to email deferment forms for delinquent accounts without the proper disclosure and as a result Plaintiff's branch almost failed an audit. Mr. Flynn was not terminated.

43.    All this discriminatory conduct culminated in Defendant terminating Plaintiff's employment for pretextual reasons due to Plaintiff's race.

44.    All the actions of Defendant show a pattern of discrimination that led to Plaintiff's unlawful termination.

45.    As a direct and proximate result of the Defendant's conduct, the Plaintiff has specifically suffered lost wages and benefits, mental anguish, emotional distress, and other damages due to the Defendant's acts, as set forth above.

46.    The Defendant's acts were intentional and/or taken with reckless indifference to the Plaintiff's federally protected rights, and thus entitle the Plaintiff to an award of non-pecuniary damages.

## COUNT TWO – § 1981 Discrimination

47.    The Plaintiff incorporates and re-alleges the facts set out in paragraphs 11-13 of this Complaint as if set forth fully herein.

48.    Defendant OneMain has with malice or reckless indifference to the federally protected rights of the Plaintiff unlawfully discriminated against the Plaintiff in violation §1981 by unreasonably interfering with Plaintiff's employment with Defendant based on her race, and denying Plaintiff the same right to make, enforce and enjoy the benefits of contracts as Caucasian persons during her employment.

49.    Plaintiff was subject to discriminatory working conditions and standards, and she was terminated and replaced by a Caucasian employee.

50.    Plaintiff and other non-Caucasian employees within her district were treated differently than Caucasian employees.

51.    The Plaintiff's District Manager, Chase Flynn, a Caucasian male, specifically targeted Plaintiff's branch, which had multiple non-Caucasian employees.

52.    Mr. Flynn and his supervisor, Herb Wilkie, another Caucasian male, unlawfully discriminated against Plaintiff and other employees in the district based on their race.

53.    Mr. Flynn treated Plaintiff differently than Caucasian employees during her tenure with OneMain.

54.    For example, Plaintiff and many others reported Brandon Brown, a Caucasian male, for issues working with others and for making gendered and racial comments, yet he received multiple chances, even being moved around between different branches, instead of being terminated.

55.    Non-Caucasian employees were not given the same chances to keep their employment.

56.    Also, when Plaintiff was out on FMLA leave late 2019-early 2020, Mr. Flynn contacted Plaintiff's branch manager, Ronald White, an African American male, requesting that Mr. White unlawfully discipline Plaintiff for being out on FMLA leave. Mr. White refused to do so.

57.    Mr. Flynn did not attempt to discipline Caucasian employees for taking FMLA leave.

58.    Mr. Flynn also got into an altercation with Plaintiff over the phone when discussing a loan in or around early 2020. Plaintiff reported Mr. Flynn through the company ethics hotline, as Mr. Flynn had treated her disrespectfully and made accusations about her work.

59.    Mr. Flynn did not treat Caucasian employees that way.

60. Furthermore, Mr. Flynn terminated Mr. White, an African American male, Plaintiff, an African American female, and Alexis Candie, a Hispanic female all within six months of one another and replaced them with Caucasian employees.

61. Another African American employee from that branch, Tina Merritt, had also been terminated by Mr. Flynn prior to the terminations of all the remaining non-Caucasian employees at the branch, including Plaintiff.

62. Mr. White was replaced by Pamela Vaughn, a Caucasian female, and another Caucasian employee showed up to work the day Plaintiff and Ms. Candie were terminated.

63. Plaintiff's branch manager, Mr. White, was terminated by Defendant for violations that Caucasian branch managers were not terminated for.

64. Upon Mr. White's termination, Defendant also discriminated against Plaintiff by failing to promote to her.

65. Plaintiff as the assistant branch manager was responsible for running the branch in Mr. White's absence.

66. However, when Plaintiff asked Mr. Flynn for access to be able to take over Mr. White's duties while the position was open, Mr. Flynn refused and brought in Ms. Vaughn instead to perform what should have been Plaintiff's duties in Mr. White's absence.

67.    Therefore, Ms. Vaughn was given the branch manager position and duties before interviews were even conducted in January of 2021.

68.    Plaintiff was interviewed for the position, and despite being qualified for the position, being previously told she was next in line for the job should anything happen to Mr. White by Mr. Wilkie, and familiar with the branch and a well performing member of the branch, Plaintiff was not awarded the position.

69.    After Mr. Flynn brought in Ms. Vaughn to replace Mr. White, he had her pull old loans that had already passed an audit to find any mistakes as a pretext for terminating Plaintiff due to her race as well.

70.    Plaintiff's branch was a well-performing branch, her branch passed all of their audits, Plaintiff received good performance reviews, and Plaintiff did not have write-ups against her, yet she was terminated for a miscommunication about whether an employer had been called to confirm employment on a loan.

71.    Caucasian employees had similar or bigger mistakes with loan applications and they were not terminated.

72.    Caucasian employees were treated differently than non-Caucasian employees in the district in terms of discipline.

73.    Furthermore, Caucasian employees have made mistakes with paperwork, failed to make a call properly to confirm a payment or information for

a loan, loans have failed audits in other branches, yet these employees were not immediately terminated.

74. Mr. Flynn himself made a major mistake by asking his branches to email deferment forms for delinquent accounts without the proper disclosure and as a result Plaintiff's branch almost failed an audit. Mr. Flynn was not terminated.

75. All this discriminatory conduct culminated in Defendant terminating Plaintiff's employment for pretextual reasons due to Plaintiff's race.

76. All the actions of Defendant show a pattern of discrimination that led to Plaintiff's unlawful termination.

77. As a direct and proximate result of the Defendant's conduct, the Plaintiff has specifically suffered lost wages and benefits, mental anguish, emotional distress, and other damages due to the Defendant's acts, as set forth above.

78. The Defendant's acts were intentional and/or taken with reckless indifference to the Plaintiff's federally protected rights, and thus entitle the Plaintiff to an award of non-pecuniary damages.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff respectfully requests that this Court grant the following relief:

(a)    Grant the Plaintiff a declaratory judgment that the practices complained of herein are in violation of Title VII and 42 U.S.C. § 1981;

(b)    Grant the Plaintiff an Order enjoining the Defendant from engaging in discriminatory practices on the basis of race;

(c)    Grant the Plaintiff the appropriate amount of back pay, loss of employment benefits, and other damages for the unlawful and discriminatory practices of the Defendant, or in the alternative, front pay;

(d)    Grant the Plaintiff an award of compensatory and/or punitive damages to make her whole;

(e)    Award the Plaintiff her costs and expenses, including a reasonable attorney's fee; and,

(f)    Award such other and further relief as may be permitted by statute or as may be just and proper.

DATED this 8th day of March, 2022.

Respectfully Submitted,

**/s/ Charles A. Hardin**
Charles A. Hardin (ASB-9519-R67C)
2121 14th Street
Tuscaloosa, Alabama 35401
Telephone: (205) 523-0462
Email: cah@hardinhughes.com

*Attorney for Plaintiff*

## **<u>Jury Demand</u>**

Plaintiff demands trial by struck jury.

**<u>Defendant's Address:</u>**
OneMain General Services Corporation
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104